[Civ. No. 48841. Second Dist., Div. Five. Apr. 25, 1977.]

ZILLA ANN DUJARDIN et al., Plaintiffs and Appellants, v. VENTURA COUNTY GENERAL HOSPITAL et al., Defendants and Respondents.

353

**COUNSEL**

Robert J. Herman for Plaintiffs and Appellants.

Don Dewberry and Richard B. Swinney for Defendants and Respondents.

## Opinion

**HASTINGS, J.**—This is an appeal by Zilla Ann and William Dujardin (appellants) and their minor child, Dorothy Mae Dujardin, (Dorothy Mae) from a judgment of dismissal based upon the trial court's order sustaining a demurrer by the County of Ventura and Ventura County General Hospital (respondents) without leave to amend.

The appellants, Zilla Ann and William, had several children and desired to limit the size of their family for reasons which included their modest financial resources. They sought advice on birth control methods from the Ventura Health Clinic, a county facility. A Health clinic employee prescribed an intrauterine device (IUD) for Zilla Ann known as a Dalkon shield, and inserted the IUD during April 1973.

During approximately October 1973, Zilla Ann became pregnant. The pregnancy was uterine and the appellant Dorothy Mae was born on July 19, 1974, with various birth defects.

Appellants allege that in late November 1974, the Federal Food and Drug Administration (FDA) released reports in which it found that certain IUD's, including the type represented by the Dalkon shield, were unsafe and were voluntarily being removed from the market.

On January 15, 1975, a claim was filed with the County of Ventura pursuant to Government Code section 910. By letter dated March 3, 1975, appellants were notified that their claim had been rejected by operation of law on March 1, 1975. (Gov. Code, § 912.4.) On July 18, 1975, appellants filed a complaint for negligence, breach of warranty and strict liability in tort against the manufacturer of the IUD and the respondents herein.

Respondents' demurrer and points and authorities filed November 12, 1975, was based on the ground that appellants did not comply with the mandatory statutory claim provisions of Government Code section 911.2.[1]

---

[1]Government Code section 911.2 provides as follows: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than the 100th day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action."

Respondents contend that appellants' action accrued not later than Dorothy Mae's date of birth on July 19, 1974, therefore their claim filed January 15, 1975 was not within the 100-day period.

Appellants maintain that the cause of action did not accrue until November 1974, when they first discovered the possible cause of their injuries after release of the FDA reports.

■ Timely compliance with the claim filing requirements and rejection of the claim by the governmental agency must be pleaded in a complaint in order to state a cause of action. (*Whitfield* v. *Roth,* 10 Cal.3d 874, 883 [112 Cal.Rptr. 540, 519 P.2d 588]; *Wilson* v. *People* ex rel. *Dept. Pub. Wks.,* 271 Cal.App.2d 665, 668 [76 Cal.Rptr. 906]; *Burgdorf* v. *Funder,* 246 Cal.App.2d 443, 446-447 [54 Cal.Rptr. 805]; Gov. Code, § 945.4.) Since the complaint in this action stated that a claim was filed on January 15, 1975, and rejected by operation of law on March 1, 1975, the primary question which requires determination is when appellants' cause of action accrued. If the cause of action did not accrue until November, appellants were within the 100-day time limitation. If the cause of action accrued in July, as respondents contend, the time limitation was not met.

■ The accrual time of actions for purposes of the claim filing requirement are governed by the Code of Civil Procedure sections which relate to the particular actions. (Gov. Code, § 901; *Whitfield* v. *Roth, supra,* 10 Cal.3d 874, 884-885; *Wozniak* v. *Peninsula Hospital,* 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84].)

Malpractice claims, are governed by Code of Civil Procedure section 340.5. The rules for determining the time of accrual for such actions are well settled. ■ A cause of action normally accrues at the time the injury occurs. However, in medical malpractice cases, among others, the cause of action does not accrue until the plaintiff discovers the injury and its negligent cause. This modification of the general principle, commonly called the discovery rule, also has its limitations. If, through the exercise of reasonable diligence the injured party should have discovered the injury and its cause, their failure to do so will not prevent the running of the statute. (*Whitfield* v. *Roth, supra,* p. 885; *Wozniak* v. *Peninsula Hospital, supra,* p. 722; *Warrington* v. *Charles Pfizer & Co.,* 274 Cal.App.2d 564, 570 [80 Cal.Rptr. 130]; *Weinstock* v. *Eissler,* 224 Cal.App.2d 212, 226-227 [36 Cal.Rptr. 537].)

▉ In order to properly raise the issue of belated discovery, the plaintiff must state in his complaint when the discovery was made, the circumstances surrounding the discovery, and facts which show that the failure to make an earlier discovery was reasonable, justifiable and not a result of plaintiff's failure to investigate or to act. (*Weinstock* v. *Eissler, supra,* at pp. 227-228; *Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d 57, 64-65 [9 Cal.Rptr. 555]; *Myers* v. *Stevenson,* 125 Cal.App.2d 399, 403 [270 P.2d 885].) An examination of the complaints in the instant action indicates that appellants did allege facts sufficient to satisfy these pleading requirements and raised the issue of belated discovery.[2]

▉ Once the belated discovery is properly pleaded, the question becomes whether the failure to discover the injury and its negligent cause earlier was justifiable and reasonable so as to prevent the running of the statute of limitations. Because the question of belated discovery depends on the facts and circumstances surrounding the negligent act and the subsequent events leading to discovery, the issue is ordinarily one of fact for a court or jury to decide. The inquiry on appeal from a dismissal after a successful demurrer without leave to amend must be whether the trial court could determine, as a matter of law, that the failure to earlier discover the cause of action was due to appellants' failure to investigate or act with reasonable diligence.

▉ The facts of this case do not justify the court's sustaining of the demurrer. There are two sources of injury alleged in the complaint. One claim of injury appears to be based solely upon the occurrence of pregnancy. The second alleged injury is predicated upon the fact that the pregnancy was terminated prematurely and that the child was born with birth defects. With regard to the first injury, appellants indicate that they were aware that birth control devices are not foolproof. In other words, appellants realized that IUD's were not 100 percent effective and that there was some risk that Zilla Ann might become pregnant, thereby they had no reason to believe that the birth might have been caused by a

---

[2]At paragraph 15 of the first complaint and paragraph 12 of the second complaint, appellants allege as follows: "The Statute of Limitations, so far as it relates to the within Causes of Action and claim against the governmental entity, is tolled in that the negligence, breach of warranty and strict liability in tort of the defendants named herein was known only to the said defendants and not revealed to the plaintiffs or any of them. Plaintiffs were unaware that they had a cause of action until the latter part of 1974, when the Federal Drug Administration revealed that said Intrauterine Devices were not safe or effective and were voluntarily being removed from the market. None of the plaintiffs named herein were aware of their cause of action until on or about November 27 or 28, 1974."

defective Dalkon shield until they read the information released by the FDA in November 1974.

As to the injuries claimed to have resulted from the premature birth and birth defects, appellants allege that they have information that these injuries resulted from the unsafe character of the Dalkon shield. Again, appellants assert that their suspicions were first raised by the FDA reports released in November.

The cause of action for all of the parents' injuries is governed by Code of Civil Procedure section 340.5. Appellants rely on the case of *Warrington* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d 564, in support of their belated discovery.

In the *Warrington* case, the plaintiff appealed from a judgment of dismissal which followed defendants' successful demurrer based on the one-year statute of limitations in Code of Civil Procedure section 340, subdivision 3. The plaintiff, during her pregnancy, had taken a drug prescribed by her doctor and manufactured by the defendant. The plaintiff had suffered various physical ailments during and after the pregnancy, and the child developed cerebral palsy. The action related only to the mother's injuries. The pregnancy terminated with an apparently normal birth on August 9, 1963. On March 13, 1965, plaintiff consulted with an attorney regarding her son's condition. She mentioned to that attorney her ailments during pregnancy and, in response to his questions, told him about the drug. Her attorney raised the possibility that the drug was the cause of plaintiff's illness. The action was filed on March 4, 1966.

On appeal the court found that the defendant had represented to the public and the medical profession that the drug was safe and that plaintiff's doctor, relying on those representations, repeated them to the plaintiff. Plaintiff, in turn, relied on those representations and as a consequence did not discover the cause of action until March 1966. In addition, the defendant failed to give the plaintiff any notice of the insidious effect the drug could have and therefore, the plaintiff did not suspect the cause of her illness. The reviewing court thereupon held that the belated discovery was reasonable and the cause of action had not accrued until March 13, 1965, the date appellant's suspicions were first aroused.

Respondents in the case at bar attempt to distinguish *Warrington*; they state that the representation in *Warrington* was that a certain drug was safe, whereas in the instant action, the only representation was that the prescribed method of birth control was proper. Respondents contend that, "appellants'· complaint fails to allege that respondents made any other representations to appellants." This argument is without merit. Appellants first cause of action alleges that defendants represented that the Dalkon shield was an effective method of birth control. Appellants second cause of action alleges that defendants represented and expressly warranted that the IUD was safe and fit for use and that the defendants did not reveal to the appellants the possible harmful effects of the IUD.

Clearly the *Warrington* case is directly applicable. Based upon the defendants' representations, warranties and failure to supply information, it appears plausible for appellants herein not to have suspected that the pregnancy and the abnormal pregnancy and both resulted from the defective nature of the IUD, rather than normal pregnancy risks, just as the plaintiff in *Warrington* did not suspect that her illness during pregnancy was other than the normal illness associated with pregnancy.

Absent such suspicion or information, appellants would have had no basis for suspecting that the respondents had been negligent in prescribing the Dalkon shield as a method of birth control until the release of the FDA report, and could not in the exercise of reasonable diligence have discovered such information.

■    With regard to the minor's cause of action, it accrues at birth and the claim filing requirements apply with equal force to minors. (*Artukovich* v. *Astendorf,* 21 Cal.2d 329, 335 [131 P.2d 831]; *Wozniak* v. *Peninsula Hospital, supra,* 1 Cal.App.3d 716, 723.) However, the discovery rule also applies to actions brought on behalf of minors. (*Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399, 403, 407.) In determining the applicability of the discovery rule to a minor's cause of action it is the knowledge or lack thereof of the parents which determines the time at which the cause of action accrued. (*Whitfield* v. *Roth, supra,* 10 Cal.3d 874, 885; *Wozniak* v. *Peninsula Hospital, supra,* at p. 723.)

■    Respondents contend that the discovery rule is not properly applicable to the minor's cause of action because her trauma was perceptible at the moment of birth. However, the fact that the abnormal condition of the child was evident does not indicate that the cause of the condition was also apparent or discoverable.

In *Wozniak* v. *Peninsula Hospital, supra,* the minor plaintiff underwent an operation to correct her crossed eye. During the operation she suffered a cardiac arrest which resulted in brain and nerve damage, affecting her legs. A summary judgment was awarded the defendant after a determination that the plaintiff had not filed a timely claim. That determination was based upon the trial court's finding as to the time the cause of action accrued. On appeal, the court reversed the summary judgment holding that whether the parents should have discovered the cause of action earlier was a question of fact. The court reasoned that although the parents were aware of the abnormal condition, they had no information as to the cause of the injury. (*Id.,* at pp. 724-725.) Specifically, the court found that, ". . . the record does not connect the defects with the operation or lack of hospital care," and "[t]here is nothing in the record to indicate that the Wozniaks were ever informed by the hospital or the physicians as to the cause of the brain and nerve injury or of the end result to be anticipated." (*Id.,* at pp. 724-725.)

In the instant case, the minor's birth defects could have been a natural result of the pregnancy and premature birth. Since appellants were not informed by the hospital or physician of a possible connection between the abnormal conditions and the IUD, it cannot be concluded that appellants' failure to discover the cause of the injuries before November 1974, was unreasonable.[3]

Therefore, while we do not decide the issue as to when the cause of action accrued, we conclude that the pleadings were sufficient to raise the issue of belated discovery, that it cannot be said as a matter of law that appellants failure to make an earlier discovery was unreasonable, and that appellants should have the opportunity to present their proof to the trier of fact.

"It is not the policy of the law to unjustly deprive one of his remedy. On the other hand, if the proof shows knowledge or cause for knowledge

---

[3] The *Wozniak* court also recognizes a very liberal policy when minors are involved. It stated on page 723, ". . . We feel, however, that in determining whether Christine's parents exercised reasonable diligence in discovering the negligence of respondent hospital their action should be liberally interpreted with a view to protecting her rights as a minor. It is well settled that despite seeming ineptness and lassitude of the parents or other representatives that both the Legislature and the courts seek to protect the rights of minors."

there is no policy which requires protection of the plaintiffs." (*Howe* v. *Pioneer Mfg. Co.*, 262 Cal.App.2d 330, 346 [68 Cal.Rptr. 617].)

Appellants also raise an issue of substantial compliance with the tort claim filing requirements. In the instant case, appellants filed a claim, not an application for leave to file a late claim, and the question is, if the claim was not filed within the 100-day period, can appellants be relieved of their failure to comply with the requirements for presentation of a late claim. (Gov. Code, § 911.4.)

Since the necessity for compliance with the claim filing requirements is well-established, we view the situation in this case as raising an issue of estoppel, not substantial compliance. The facts relating to the action taken by the county in this case are analogous to those in *McLaughlin* v. *Superior Court*, 29 Cal.App.3d 35 [105 Cal.Rptr. 384]. In *McLaughlin* the plaintiff filed an application for leave to file a late claim. The response by the state board led the plaintiff to believe that the board had acted on the claim itself, not the application for leave to file. As a result, the plaintiff did not petition the court for relief from the filing requirements. The reviewing court reversed the summary judgment granted the defendants below. In holding that the defendants were estopped from asserting noncompliance with the filing requirements, the court said, ". . . It was both confusing and misleading to include in the board's letter to petitioner a warning which only pertains to action taken upon a claim." (*Id.*, at p. 39.)

In the case at bar, from an examination of the letter sent by the county in response to appellants' claim, it appears that the claim was considered on its merits and rejected. It then contains a paragraph that states: "WARNING—Subject to certain exceptions, *you have only six (6) months from the date of this notice . . . to file a court action on this claim.* See Government Code Section 945.6." (Italics added.) ▉ If such was the case or appellants were misled by the letter into believing that they had met the claim filing requirements, these facts and the county's failure to give notice that the claim was rejected because of untimely filing, may create an estoppel, which is also for the trier of fact to determine. (*Wozniak* v. *Peninsula Hospital, supra*; *Harvey* v. *City of Holtville*, 252 Cal.App.2d 595, 598 [60 Cal.Rptr. 635].)

Because we find that appellants' complaints were sufficient, the judgment of dismissal is reversed with directions to the trial court to

overrule the demurrer and to require respondents to answer within such time as the court may fix.

Kaus, P. J., and Stephens, J., concurred.