**PINOLE POINT PROPERTIES, INC., a California Corporation, Plaintiff,**

v.

**BETHLEHEM STEEL CORPORATION, a Delaware Corporation, Defendant.**

**No. C–83–5893–RPA.**

United States District Court, N.D. California.

Oct. 22, 1984.

Steven N. Roberts, Nossaman, Gutchner, Knox & Elliott, San Francisco, Cal., for plaintiff.

Gary H. Anderson, Patrick L. Finley, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant.

## OPINION AND ORDER

AGUILAR, District Judge.

This is one of the earliest cases in which a federal district court has been called upon to interpret the meaning of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "the Act"). On the present motion, the Court must determine the extent, if any, to which CERCLA provides for a private cause of action. More specifically, the Court must determine whether the Act contemplates recovery for private clean-up activities that are undertaken at a hazardous waste disposal site in the absence of any governmental action with respect to the particular site.

### FACTS: [1]

Plaintiff, Pinole Point Properties, is a subsidiary of a small, local steel concern called Pinole Point Steel Company. On or about February 20, 1979, Pinole Point Steel Company purchased a tract of land from defendant Bethlehem Steel Corporation. On or about December 17, 1979, the tract of land was transferred from Pinole Point Steel Company to plaintiff, Pinole Point Properties. Plaintiff still owns the land today.

There is a pond located on the land in question. Plaintiff alleges that from 1965 to 1975 defendant released hazardous substances into the pond. More specifically, plaintiff alleges that the defendant used the pond as a "facility" within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Plaintiff has commenced clean-up operations at the pond.

In this lawsuit, plaintiff seeks a declaratory judgment that defendant will be liable for plaintiff's past, present and future clean-up costs. In addition to seeking recovery under CERCLA, plaintiff also alleges state causes of action under theories of nuisance and ultrahazardous activity.

Defendant moves to dismiss plaintiff's entire complaint for failure to state a claim

upon which relief may be based. Fed.R. Civ.P. 12(b)(6). Defendant maintains that plaintiff cannot bring this action under CERCLA for a variety of reasons including: (1) CERCLA does not apply to disposal sites that the government has not acted upon or regulated; (2) plaintiff lacks standing to sue under CERCLA; (3) plaintiff's CERCLA claims are not ripe for adjudication; and (4) CERCLA precludes private claims for damages to natural resources. Defendant also argues that plaintiff's state law claims do not set forth proper causes of action and are barred by the statute of limitations in any event. Plaintiff opposes the motion to dismiss in all respects.

### FEDERAL CLAIMS

Defendant's motion to dismiss plaintiff's CERCLA claims, and plaintiff's opposition to the motion, reflect fundamentally opposed views of the purpose of the Comprehensive Environmental Response, Compensation and Liability Act. Essentially, defendant reads the Act as giving the government the authority to respond to the problem of hazardous waste disposal sites. Defendant contends that the Act provides for a single response to the problem of hazardous waste disposal sites, and that the response contemplated is governmental or at least government triggered. In this sense, defendant gives the Act a narrow construction.

Plaintiff, on the other hand, views the Act as a comprehensive response to the hazardous waste disposal problem. Plaintiff maintains that CERCLA provides for a variety of public and private responses to the hazardous waste disposal site problem. Plaintiff argues that the Act contains independent and severable provisions for certain governmental actions, certain private actions, and for recovery from the so-called Superfund under some circumstances. Plaintiff therefore interprets the Act broadly as permitting and even encourag-

1. The statement of the facts is drawn from plaintiff's complaint. The case is before the Court on defendant's motion to dismiss, and

therefore the Court accepts as true the factual allegations set forth in plaintiff's complaint.

ing private initiative in eradicating hazardous waste sites.

The differing views of the general intent of the Act underlie the parties' positions on the motion to dismiss. In determining this motion, then, the Court will be required to take a position on the scope of the Act. Thus, it is appropriate for the court to begin its discussion with an overview of CERCLA.

*Overview of CERCLA:*

Congress enacted CERCLA on December 11, 1980. The major provisions of the Act are set forth below.

Section 101 of the Act contains the definitions that relate to the Act. The next section, section 102, bestows upon the Administrator of the Environmental Protection Agency (EPA) the authority and obligation to promulgate regulations designating what will be considered a hazardous substance and what level of release must be reported. Section 103 contains the requirements with respect to reporting the existence of a release of hazardous substances.

Section 104 establishes the parameters and procedures of the governmental response to the hazardous waste disposal site problem. Among other things, section 104 gives the President the authority to act in response to the release of hazardous substances. It also puts certain limits on expenditures from the fund created by the Act, and it provides for cooperation between the federal government and state and local governmental authorities.

Section 105 requires that the President prepare a National Contingency Plan (NCP) for the removal of hazardous substances and calls for EPA to devise a comprehensive scheme for addressing the problem of hazardous waste disposal sites. Further, section 105 directs EPA to establish priorities and to reflect those priorities in a national list of priority clean-up sites. (The parties refer to this list as the National Priorities List or NPL.)

Section 106 provides for abatement actions brought by the government in cases involving an imminent and substantial endangerment to public health and welfare. Under section 106, the President may ask the Attorney General to "secure such relief as may be necessary to abate such danger." The EPA is also directed to establish guidelines for the application and use of the procedure in section 106.

Section 107, which is a major focus of the instant motion to dismiss, is the section that assigns liability for the release of hazardous wastes. The reach of the liability is extremely broad. The parties that are liable include owners of vessels, owners of the site at the time of dumping, present owners of the site, anyone who by contract or agreement arranged for the disposal or transport of hazardous wastes to the site, and any person who accepted hazardous wastes for disposal at the site. Under section 107(a), the liable parties are responsible for: (1) all costs of removal incurred by the federal or state governments not inconsistent with the National Contingency Plan (NCP); (2) any other response costs incurred by any other person consistent with the NCP; and (3) damages for injury to or loss of natural resources.

Section 107(b) contains the defenses to liability. The defenses are extremely limited, including only acts of God, acts of war, and acts of an unconnected third party if the liable party can show it exercised due care and took reasonable precautions against foreseeable acts by the third parties.

The remainder of section 107 concerns determinations of the amount of damages that can be recovered from liable parties.

Section 108 provides that parties who are engaged in transporting hazardous waste materials must produce a bond insuring their financial responsibility for any damages that may occur. Section 109 provides civil penalties against any parties who do not comply with the requirements of section 108.

Section 110 protects employees who report the existence of a hazardous waste disposal site. This section is essentially a "whistleblower" protection provision.

Whistleblowers are protected from adverse employment actions that may arise from their reporting.

Sections 111 and 112 control the use of the so called "Superfund." Section 111 spells out the authorized uses of the $1.6 billion in the fund. Section 112 establishes the procedures for making claims against the fund.

To date, only a few courts have had occasion to interpret the provisions of CERCLA. Thus, the Court does not have much case authority upon which to rely. Furthermore, the Act's legislative history is not very helpful. The Act passed after a major floor fight in the Senate. Major amendments were proposed and adopted on the floor, and the Court is therefore left without the ordinary sources of legislative history.

In general, the courts that have interpreted CERCLA have given it a broad reading. Judge Magnuson of the federal district court in Minnesota said:

A review of the statute and the Committee Reports reveals at least two Congressional concerns that survived the final amendments to the Act. First, Congress intended that the federal government be immediately given the tools necessary for prompt and effective response to problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created.

*United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100 (D.Minn.1982).

Based on this reading of Congressional intent, Judge Magnuson concluded that "CERCLA should be given a broad and liberal construction. The statute should not be narrowly interpreted to frustrate the government's ability to respond promptly and effectively, or to limit the ability of those responsible for cleanup costs beyond the limits expressly provided." *Reilly Tar*, 546 F.Supp. at 1112. Similarly, in *United States v. Wade,* Judge

Newcomer of the Eastern District of Pennsylvania gave the Act a broad reading at every opportunity. 577 F.Supp. 1326 (E.D. Pa.1983). Thus, although the precedent is thin, the courts that have addressed the question of the scope of CERCLA have erred on the side of giving a broad reading to the Act.

With these prefatory comments set forth, the Court turns to a consideration of the specific grounds for dismissal stated in defendant's motion.

1. *Does CERCLA apply to hazardous waste disposal sites that are not on the National Priorities List (NPL) and are not otherwise regulated by the federal government?*

Plaintiff concedes that the land in question does not appear on the National Priorities List (NPL). In fact, the federal government has not regulated this land in any respect. Further, the federal government has not approved or certified the clean-up activities that plaintiff has undertaken or plans to undertake in the future. Defendant argues that because there has been no governmental action whatsoever with respect to plaintiff's land, plaintiff cannot state a cause of action under CERCLA.

Plaintiff seeks recovery under section 107(a)(4)(B) of the Act. The relevant portion of section 107(a) provides that "[n]otwithstanding any other provision or rule of law and subject only to the defenses set forth in subsection (b) of this section," the present owner of a facility, the owner at the time of the hazardous waste release, and other specified parties shall be liable for

(4)(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the [NCP]; (B) any other necessary costs of response incurred by any other person consistent with the [NCP]; and (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such

injury, destruction, or loss resulting from such a release.

Defendant argues that section 107 does not authorize a private right of action. Rather, defendant maintains that section 107 merely establishes liability for purposes of sections 111 and 112, which govern use of the Superfund. Under section 112(a), a claimant against the Superfund must first present its claim to any party that might be liable under section 107. If that claim is not satisfied, the claimant may bring an action directly against the responsible party or may make a claim against the Superfund. Payments from the Superfund are limited to "necessary response costs incurred by [any party other than the government] as a result of carrying out the National Contingency Plan, provided, however, that such costs must be approved under said [National Contingency] Plan and certified by the responsible federal official." 42 U.S.C. § 9611(a)(2). Based on this language, defendant contends that CERCLA envisions governmental action as a condition precedent to any and all private liability.

■ The Court is not swayed by defendant's interpretation of the statutory language. The Court finds that section 107 and sections 111 and 112 provide causes of action that are distinct and independent. Close attention to the statutory language reveals the correctness of this view.

First of all, the opening clause of section 107 lends itself to broad interpretation. The opening clause states a severe limitation on defenses available in cases under section 107: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...". This limitation on defenses surely suggests the existence of a basis

for liability separate and independent from liability under sections 111 and 112.

Second, the language of section 107(a)(4)(B) is extremely broad and inclusive. That section states that "[a]ny person who ... owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for any other necessary costs of response *incurred by any other person* consistent with the National Contingency Plan." 42 U.S.C. § 9607(a)(4)(B) (emphasis added). It is difficult for the Court to imagine statutory language that would more clearly grant a private cause of action.

Third, defendant's attempt to join sections 107 to sections 111 and 112 does not make sense. Section 112 requires that a person claiming against the Superfund first obtain federal approval of its response costs under the National Contingency Plan. This requirement makes perfect sense in light of the limited availability of federal funds. The requirement does not, however, make sense when applied to causes of action that do not involve the government. This, too, indicates that section 107 should be read as creating a cause of action independent from that created in sections 111 and 112.[2]

Further support of the separateness of the sections is evidenced by the language of section 108(c) which provides that "any claim authorized by section 9607 *or* 9611 of this title may be asserted against any guarantor ..." 42 U.S.C. § 9608(c) (emphasis added).[3]

Finally, the relevant case law supports the Court's conclusion that section 107 creates an independent basis for recovery. In *U.S. v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100 (D.Minn.1982), Judge Magnuson addressed this point directly. Defend-

---

**2.** Moreover, while it is true that section 112(a) permits private parties to choose between suing under section 107 or claiming against the fund, nothing in section 112(a) limits section 107's cause of action to claims that could be asserted against the fund.

**3.** Defendant's argument that "claim" in this context refers to a "demand in writing for a sum

certain," but not to a legal action, is without merit. Section 108(c) allows the guarantor to "defend" the claim asserted. Moreover, section 108(d) explicitly provides that "[a]ny guarantor acting in good faith against which claims under this chapter are asserted as a guarantor shall be liable under [section 107] of this title or [section 112(c) ] of this title only up to [policy limits]."

ant, Reilly Tar, sought to limit liability under section 107 to those costs for which expenditures could be made from the Superfund. Reilly Tar argued that all claims, whether against the government or a private party, must be assertable against the fund under section 111 or are not compensable. Judge Magnuson concluded that "Reilly Tar's complex analysis of the Act is incorrect. Most importantly, *Reilly Tar* errs in attempting to link liability under section 107 to authorized uses of the Fund provided in section 111. Liability under section 107(a) is independent of the authorized uses of the Fund under section 111 ...." *Reilly Tar*, 546 F.Supp. at 1114.

From reading the language of section 107, Judge Magnuson found that the section "was meant to stand by itself; liability under it can be determined without the numerous inquiries suggested by the defendant .... Liability for the specified response costs under section 107(a) is absolute, subject only to the defenses listed in section 107(b) ...." *Id.* Finally, Judge Magnuson concluded that because "[t]here is no claim before the court seeking recovery from the Fund ... [t]he authorized uses of the Fund provided by section 111 are ... not relevant to this action." *Id.*

Judge Magnuson's decision in *Reilly Tar* is directly applicable to the instant case and strongly supports this Court's analysis. Chief Judge Clark of the Western District of Missouri reached the same conclusion in *United States v. Northeastern Pharmaceutical and Chemical Co.*, 579 F.Supp. 823 (W.D.Mo.1984). Chief Judge Clark found "[t]he fact there is not a claim before this Court seeking recovery on behalf of the fund does not bar recovery by the plaintiff. An action brought pursuant to section 107(a) [is] independent and separate of the provisions authorizing use of the Superfund." Both *Reilly Tar* and *Northeastern Pharmaceutical* involve actions brought by the federal government. However, courts faced with private litigants have reached the same conclusion. *See e.g. Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1428 (S.D.Ohio 1984); *City of Philadelphia*

*v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1142 n. 9 (E.D.Pa.1982).

Thus, based on the language of the statute and the prior court decisions interpreting that language, this Court concludes that section 107 does provide for a private cause of action and a basis of liability that is separate and distinct from the liability created in sections 111 and 112.

■ Defendant's other argument about section 107 is that the language requiring that recoverable costs be "consistent with the National Contingency Plan" is exactly the same as the requirement in section 111(a) that costs recoverable from the fund be incurred "as a result of carrying out the National Contingency Plan." In this manner, defendant attempts to convince the Court that plaintiff's costs cannot be "necessary" or "consistent with the National Contingency Plan" because plaintiff did not incur its costs at EPA's direction. Defendant also points out that the National Contingency Plan provides for remedial responses only at sites listed on the National Priorities List and only after analysis and evaluation by the EPA. *See* 40 C.F.R. §§ 300.68(a) and 300.68(f)–(i). Two recent decisions of California district courts provide support for defendant's argument. *See Wickland Oil Terminals v. ASARCO, Inc.*, 590 F.Supp. 72 (N.D.Cal., 1984); *Cadillac-Fairview/California, Inc. v. Dow Chemical Co.*, CV–83–7996/CV–83–8034 (C.D.Cal. Mar. 5, 1984).

Once again, the Court must disagree with defendant's interpretation of the Act. First, assuming the correctness of defendant's equation of "consistency with" the NCP under section 107(a)(4)(B) and "carrying out" the NCP under section 111(a)(2), the second clause of the latter provision contains an additional requirement for Superfund claims: "Provided, however, that such costs must be approved under said plan and certified by the responsible federal official."

If "consistency with" the NCP *included* government approval and/or certification, the second clause of § 9611(a)(2) would be unnecessary, and statutes should be read

to avoid surplusage. *See Petro Marketing Group, Inc. v. Commodity Futures Trading Comm.,* 680 F.2d 566, 569–70 (9th Cir. 1982). Consistency with the NCP and government pre-authorization are thus distinct requirements, only the first of which must be satisfied for recovery under section 107(a)(4)(B).

Second, the Court's interpretation is supported by the provisions of the NCP itself. The Preamble to the Plan notes that confusion had been generated by 40 C.F.R. §§ 300.25(d)–(f) of the proposed draft as to whether those sections prohibited remedial action without prior EPA approval:

> [Section 300.25(d)] has been rewritten to require that persons who intend to undertake response actions and seek reimbursement from the Fund, must obtain pre-authorization in order for the response action to be considered consistent with the Plan for purposes of section [9611(a)(2)] of CERCLA.... *Section 300.25(d) does not apply to private parties who undertake response actions, but do not intend to seek reimbursement from the Fund.*

44 Fed.Reg. 31180, 31196 (July 16, 1982) (emphasis added).

The underlined language makes clear that consistency with the NCP for purposes of a private action under section 107(a)(4)(B) does not require federal pre-authorization or supervision.

Moreover, the limitation in 40 C.F.R. § 300.68(a) of remedial actions to inclusion on the NPL applies only for purposes of response financed by the Superfund. The priority list serves to allocate scarce government resources, a purpose not served by curtailing the remedial actions undertaken by private persons who later seek to recover from those responsible for the release of the hazardous waste disposal. Thus, consistency with the National Contingency Plan, not pre-authorization or

appearance on the National Priorities List, is all that is required under section 107(a)(4)(B).

In *Stepan Chemical,* the court refused to dismiss plaintiff's action under section 107. The *Stepan Chemical* court rejected the same argument that defendant here proposes—that private actions cannot be consistent with the National Contingency Plan unless the federal government has taken some action in connection with the disposal site in question. The court found that the legislative history of CERCLA "indicates that the National Contingency Plan was regarded as a means of assuring that responses under the act would be both cost-effective and environmentally sound." 544 F.Supp. at 1144 n. 16.

■ By its ruling here, the Court does not mean to suggest that it has concluded that plaintiff's clean-up activities are consistent with the NCP. As other courts have recognized, the party seeking to recover its costs must bear the burden of pleading and proving consistency with the National Contingency Plan. *See e.g., Northeastern Pharmaceutical,* 579 F.Supp. at 850–51. However, the question of consistency is a factual determination that turns on the efficacy and cost-effectiveness of clean-up action. This factual determination cannot be made on the basis of the pleadings but must await development of a factual record. *Stepan Chemical,* 544 F.Supp. at 1144.[4] Thus, at this time the Court expresses no opinion about the ultimate question of whether plaintiff's response was consistent with the National Contingency Plan.

*2. Does plaintiff have standing to seek recovery of costs under Section 107?*

■ As the present owner of a hazardous waste disposal site, plaintiff itself is potentially a liable party under section 107(a). Defendant claims that as a poten-

---

**4.** There is an indication of some concern that the Court's decision will involve courts in determining whether private remedial actions are safe, environmentally sound, and cost-effective. This concern is unwarranted. Courts are clear-

ly capable of assessing a private party's remedial action to determine consistency with agency guidelines just as courts review agency action to determine compliance with statutes or regulations.

tially liable party, plaintiff has no standing to sue under section 107(a)(4)(B). Defendant argues that allowing a liable party to sue under section 107 would inevitably lead to absurd results. For instance, defendant asserts that section 112(a) would require a liable party to present a claim against itself. Also, defendant suggests that if a liable party could claim against the fund, then the government would be entitled under section 112(c)(1) to subrogation to recover the dispersed funds from the claimant, resulting in a merry-go-round of litigation.

Defendant's argument must fail. The provisions upon which defendant relies concern claims against the Superfund under sections 111 and 112. As the Court determined earlier in this Opinion, there is a separate and independent cause of action under section 107. Because of the Court's earlier determination, the parade of horribles suggested by defendant cannot and will not occur where an allegedly liable party seeks to recover from another liable party, rather than from the Superfund.

Further, in *Stepan Chemical,* the only case directly on point, the court rejected the very argument advanced by defendant here. The court found the defendant's argument nonsensical inasmuch as it would preclude recovery by non-culpable persons who incur cleanup costs. 544 F.Supp. at 1142. The *Stepan Chemical* court correctly noted that the phrase "any other person" in § 9607(a)(4)(B) refers to persons other than the state and federal government rather than to persons other than those liable under the Act. *Id.* Finding that liability would advance the statutory purpose of facilitating prompt clean up of hazardous waste dumpsites, the court concluded that

> [plaintiff] has undertaken to clean up the ensuing damage and now seeks to recover its response costs from parties which were allegedly involved in the illegal dumping and which are made expressly liable for response costs. I cannot conclude that [plaintiff's] right to maintain this action is barred by the hypothetical

possibility that had the federal or state government brought this suit, [plaintiff] too would be liable.

544 F.Supp. at 1143. *But see D'Imperio v. United States,* 575 F.Supp. 248, 253 (D.N.J. 1983).

In accordance with the *Stepan Chemical* decision, this court finds that plaintiff does have standing to state a claim for relief under section 107.

3. *Is plaintiff's claim for declaratory relief against defendant under CERCLA ripe for adjudication?*

■ Defendant argues that Plaintiff's action is not ripe because of lack of governmental action with respect to the disposal site in question. Defendant relies heavily on the decision in *D'Imperio v. United States,* 575 F.Supp. 248 (D.N.J.1983). In *D'Imperio,* the court dismissed as premature a complaint seeking declaratory relief. The instant case, however is readily distinguished from *D'Imperio.*

In *D'Imperio,* plaintiff sought declaratory relief against the government. The EPA had begun the early steps toward designating the D'Imperio site as a hazardous waste disposal site. The administrative decision-making process was, however, only in the preliminary stages. The EPA had not taken any final or irrevocable actions. D'Imperio sought a declaratory judgment stating that it was not liable to the EPA or the Superfund. The court dismissed plaintiff's claim because the government action was still too hypothetical.

In this case, in contrast, plaintiff has already conducted considerable clean up activities. Plaintiff has alleged that it will continue these clean up operations. Plaintiff seeks a declaration that defendant will be liable for at least some of the costs of these operations.

In cases in which either the government or a private party has expended response costs, courts have not hesitated to grant declaratory relief. In *Ohio ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300 (N.D.Ohio 1983), for example, the Court granted declaratory relief under § 9607(a)(4)(A) to the

plaintiff State that had already expended $875,000. The court held defendant liable for response costs not yet incurred. The court found plaintiff's claim was "a real controversy between parties having adverse legal interests of such immediacy and reality as to warrant a declaratory judgment," 562 F.Supp. at 1316, *see also U.S. v. Wade*, 577 F.Supp. at 1335 (government may sue under section 107(a)(4)(A) for future costs to "better effectuate the purposes of the Act"). Relying on the *Brown* and *Wade* decisions discussed earlier, the court in *Jones v. Inmont* recently refused to dismiss a private plaintiff's claim for declaratory relief as to future response costs under section 107(a)(4)(A). The *Jones* court said:

> To require either the government or a private party to complete cleanup prior to filing suit would defeat the dual purposes of CERCLA to promote rapid response to hazardous situations and to place the financial burden on the responsible parties. Therefore, as the plaintiff's complaint does allege that they have already incurred some portion of the response costs necessary to clean up the site, the controversy is sufficiently real to allow the Court to determine defendant's liability for future costs.

*Jones v. Inmont Corp.*, 584 F.Supp. 1425 at 1430 (S.D.Ohio 1984).

*Jones'* reasoning is persuasive here. Plaintiff has already expended funds for investigation and cleanup. The contours of plaintiff's controversy with Bethlehem with regard to future costs are defined clearly

enough to render appropriate a determination of future liability.

For the reasons stated above, the Court hereby denies in its entirety defendant's motion to dismiss plaintiff's claim under CERCLA.

### STATE CLAIMS

 The plaintiff's complaint also contains state law claims of nuisance and ultrahazardous activity. Both claims are barred by the statute of limitations and must, therefore, be dismissed.[5]

 Under California law, actions for injury to real property must be brought within three years after the cause of action accrues. Cal.Code Civ.Proc. § 338(2). The cause of action accrues on the date that the plaintiff knows, or reasonably should know that an injury occurred. *Dujardin v. Ventura County General Hospital*, 69 Cal. App.3d 350, 138 Cal.Rptr. 20 (1977). Furthermore, if discovery of the injury is delayed, the complaint must allege, "facts which show that the failure to make an earlier discovery was reasonable, justifiable and not a result of plaintiff's failure to investigate or act." *Id.*, 69 Cal.App.3d at 356, 138 Cal.Rptr. 20.

 The plaintiff alleges that Bethlehem released toxic substances on the property until 1975. Plaintiff bought the land in 1979 and this lawsuit was filed in December 1983. From the face of the complaint, it appears that the release of pollutants ceased approximately four years before the plaintiff bought the property. The

---

5. Even if the claims were not barred by the statute of limitations, they would likely fail on the merits. Liability for a private nuisance arises upon the invasion of *another's* interest in the use and enjoyment of land. 7 Witkin, Summary of California Law, § 91, (8th Ed.1974). At the time that defendant was using the waste disposal pond, defendant owned the pond. Defendant stopped using the pond and then sold the land to the plaintiff. Plaintiff apparently acquired the property with full knowledge of the existence of the waste disposal pond. Plaintiff makes no allegations to the contrary.

The plaintiff does not allege any facts which would demonstrate that the defendant ever interfered with the property rights of another; only that the defendant disposed of waste on its own land and then sold the land. These allegations would not ordinarily state a claim in nuisance.

The claim for ultrahazardous activity would likewise fail. Strict liability in Tort is "limited to the kind of harm the possibility of which makes the activity abnormally dangerous." Restatement 2d, Torts, § 519. The harm alleged by plaintiff here, that is, the cost of cleaning up the pond and diminished property value, is not the type of harm for which strict liability generally attaches.

plaintiff owned the land for at least four years before this suit was filed. Plaintiff has alleged no facts that demonstrate that it did not know of the state of the property at the time of the purchase; nor does the plaintiff allege that the discovery of injury to the property was delayed and that this delay was justified. Because these allegations do not appear on the face of the complaint, and because over three years passed between the date that the plaintiff acquired the property and the date that plaintiff filed this action, the Court finds that plaintiff's state claims are time barred.

The plaintiff argues that the statute of limitations has not run because the nuisance is continuing. Therefore, the plaintiff contends that it is entitled to bring successive actions for damages until the nuisance is abated. The mere existence of an abatable nuisance, however, does not toll the statute of limitations indefinitely. Rather, each separate invasion of plaintiff's property creates a new cause of action, and a new statute of limitations begins to run. *Nestle v. City of Santa Monica*, 6 Cal.3d 920, 101 Cal.Rptr. 568, 496 P.2d 480 (1972). In the present case, the plaintiff alleges that the last time Bethlehem disposed of waste in the pond was in 1975. No new invasion of the plaintiff's property rights is alleged to have occurred since then. Therefore, the statute of limitations ran in 1978 and plaintiff's nuisance claim, filed in 1983, is barred by the statute of limitations.

### CONCLUSION

Based on the analysis set forth in the body of this Opinion, and for good cause appearing, the Court hereby denies defendant's motion to dismiss plaintiff's claims under the Comprehensive Environmental Response, Compensation, and Liability Act. The Court does, however, grant defendant's motion to dismiss plaintiff's state law claims.

IT IS SO ORDERED.