[No. B026890. Second Dist., Div. Six. May 27, 1988.]

WALTER RASON et al., Plaintiffs and Appellants, v.
SANTA BARBARA CITY HOUSING AUTHORITY et al.,
Defendants and Respondents.

818

[black redaction block]

[black redaction block]

**COUNSEL**

Moises Vazquez for Plaintiffs and Appellants.

Tardiff, Rothe & Staton and Jamie M. McMillan for Defendants and Respondents.

**OPINION**

**GILBERT, J.**—Here we affirm an order dismissing a petition for relief from the requirements of the Tort Claims Act. The claimant filed his petition beyond the time limitation prescribed by Government Code section 946.6, subdivision (b).[1] Because the claimant later filed a complaint for damages, we offer some guidance which perhaps will obviate the need for further appellate proceedings.

### FACTS

Walter Rason and his son, Walter Rason, Jr., lived in public housing provided by the Santa Barbara City Housing Authority (Housing Authority). In a claim filed with the Housing Authority, the Rasons allege that on February 6, 1986, they returned home from a vacation to discover their possessions had been removed and their apartment had been rented to another person. For the next five weeks the Rasons remained homeless, until the Housing Authority provided them with another apartment.

On May 16, 1986, 99 days after returning home to discover they had been displaced, the Rasons filed a claim with the Housing Authority seeking damages for injuries caused by wrongful eviction. (§§ 905, 910, 945.4.) The Housing Authority returned the claim with a notice explaining that the claim was not presented within 100 days of accrual as required by section

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

911.2.[2] The Housing Authority apparently concluded that the cause of action accrued sometime before the Rasons discovered the eviction. The notice included this warning: "Your only recourse at this time is to apply without delay to the Housing Authority of the City of Santa Barbara for leave to present a late claim. (See sections 911.4 to 912.2, inclusive, and section 946.6 of the Government Code.) Under some circumstances, leave to present a late claim will be granted. (See section 911.6 of the Government Code)."

On June 3, 1986, the Rasons applied for "leave to present [a] late claim," although they did not concede filing late nor state reasons for filing beyond the 100-day limit. (See § 911.4.) Instead, the Rasons disputed the Housing Authority's determination that the claim was untimely. They contended that the cause of action did not accrue until they had discovered the eviction and that their claim was filed 99 days later.

The Housing Authority treated the application as if the Rasons were presenting excuses for filing a late claim, and denied the application on June 18, 1986. Notice of the denial was not mailed until approximately a month later, and the Rasons did not receive the notice until July 22, 1986, 33 days after the denial. Pursuant to section 911.3, the notice of denial included this warning: "If you wish to file a court action on this matter you must first file a petition with the appropriate court for an order relieving you from the provisions of Government Code section 945.4 (claims presentation requirement). See Government Code section 946.6. Such petition must be filed with the court within six (6) months from the date your Application for Leave to Present Late Claim was denied."

On January 15, 1987, the Rasons filed a petition for relief from the claims presentation requirements in the superior court. They asserted that they filed the claim within the requisite 100-day period, and in the alternative, that any failure to file the claim on time was through mistake, inadvertence, surprise or excusable mistake. (See § 946.6, subd. (c)(1).) The trial court dismissed the petition because it was not filed within six months of June 18, 1986, the date the application was denied by the Housing Authority. On November 30, 1987, after this appeal was filed, the Rasons filed a complaint for damages against the Housing Authority. This appeal is from the trial court's dismissal of the 946.6 petition.

We affirm the trial court's order of dismissal.

---

[2]Section 911.2 has since been amended to extend the time for filing a claim to six months. (See 32 West's Ann. Gov. Code (1988 pocket supp.) § 911.2, pp. 49-50.)

## DISCUSSION

The petition was the improper vehicle to argue that the claim was timely. This issue can only be raised in the complaint for damages. Nevertheless, it was prudent for the Rasons to have filed it. There was no way for them to know how the court would have ruled on the petition. For example, the court may have felt their claim was not timely, but that they were entitled to relief. Because the order of dismissal is not a bar to filing the complaint, we discuss these and other issues in order to forestall possible further appellate proceedings concerning some issues.

### I. *Tort Claims Act Requirements*

Before a complaint for damages against a public entity may be filed in court, a claim must first be filed with the entity in accordance with the Tort Claims Act, and rejected. (§ 945.4.) Under current law the claim has to be filed within six months of accrual of the cause of action. (§ 911.2.) At the time of this action, the claim had to be filed within 100 days. For purposes of the Tort Claims Act, the date of accrual is the same date on which the cause of action would accrue if there were no claims requirements. (§ 901.) If the claim is filed beyond the 100 days, the claimant may apply to the public entity, within a reasonable time not to exceed one year after accrual, for leave to present a late claim. (§ 911.4.)

### A. *Rejection of a Timely Claim*

The public entity must approve or reject a timely claim within 45 days and provide written notice to the claimant. (§§ 912.4, 912.6, 913.) If a timely claim is rejected in whole or in part, the claimant may file suit for money or damages within six months after the date notice is personally delivered or deposited in the mail. (§§ 945.4; 945.6, subd. (a)(1).) If the rejection is not properly noticed in accordance with section 913 however, the action may be filed in court within two years from the accrual of the cause of action. (§ 945.6, subd. (a)(2).)

### B. *Rejection of an Untimely Claim*

If the entity determines that the claim was filed late, it must return the claim within 45 days from the date it was filed, along with a notice that the claimant may apply for leave to present a late claim. (§§ 911.3, 911.4.) In responding to an application for leave to present a late claim, the entity must grant or deny leave within 45 days and provide notice. (§§ 911.6, 911.8.) As will be discussed, *infra,* a claimant who disputes the determination of untimeliness must raise that issue by filing suit rather than a section

911.4 application (*Toscano* v. *County of Los Angeles* (1979) 92 Cal.App.3d 775, 782-783 [155 Cal.Rptr. 146].)

If an application for leave to file a late claim is rejected by the public entity, the claimant must first obtain a court order for relief from the requirements of the claims act before filing a suit. (§ 946.6.) A petition for such an order must be filed with the court within six months after the application is denied or deemed denied. (§§ 946.6, subd. (b); 911.6.)

## II. *Statute of Limitations for the Section 946.6 Petition*

The Rasons filed their petition for relief from claims act requirements with the superior court on January 15, 1987, more than six months from the date the Housing Authority denied their application, but within six months of receiving notice of that action from the Housing Authority. That notice date also happened to be the 45th day after the application was filed. If the Housing Authority had taken no action by the 45th day, the application would have been deemed denied. (§§ 946.6, subd. (b); 911.6, subd. (c).)

■ The Rasons argue that legislative intent and due process requires us to rule that the six-month clock for filing the section 946.6 petition began to run on the date notice was received, instead of the date the application was denied. The Rasons argue that where notice of denial is not provided until the 45th day, section 946.6 offers the claimant the choice of filing the petition within 6 months after the actual denial date, or within 6 months after the 45th day.

The Rasons misconstrue section 946.6, subdivision (b). An application is deemed denied as a matter of law only if the public entity takes no action within the requisite 45-day period. (§ 911.6, subd. (c).) Here the Housing Authority denied the application within that period, and so there is no need to consider a "deemed" denial date. The plain meaning of section 946.6, subdivision (b), is that the six-month clock began to run on June 18, the actual date of denial.

The Rasons' reliance on *Hochfelder* v. *County of Los Angeles* (1954) 126 Cal.App.2d 370 [272 P.2d 844], and *Denham* v. *County of Los Angeles* (1968) 259 Cal.App.2d 860 [66 Cal.Rptr. 922], is misplaced. In both those cases, the public entity took action after the requisite period to act had expired. The appellate courts held that the public entities were estopped from pleading that the clock began to run at an earlier date. Moreover, the statute considered in *Hochfelder,* a predecessor to the modern Tort Claims Act, expressly stated that the claimant "may treat" the claim as rejected when the public entity does not act within the statutory time. Claimant had

the option of treating the claim as rejected when the entity actually rejected the claim after the 45th day. (*Hochfelder* v. *County of Los Angeles, supra,* at pp. 372, 374-375.) The current statute offers no such option. (§§ 911.6, subd. (c); 946.6, subd. (b).)

In *Denham,* defendant public entity was estopped to assert the time period ran from the 45th day when claimant relied on the entity's written rejection which occurred after the 45th day. The statute in effect at the time of *Denham* allowed the parties to extend by agreement the period in which the entity had to act. Therefore, the 45-day period was not a "jurisdictional limitation." (*Denham* v. *County of Los Angeles, supra,* 259 Cal.App.2d at p. 865) An agreement to extend the period could be made before or after the 45th day. (*Id.* at p. 864.) Not so with the current act. Section 911.6 still provides that the parties may extend the period in which the entity must act, but the agreement must be made before the expiration of the period to act. Here, the denial occurred before the 45th day, and the notice specifically stated that the date of denial was June 18. Estoppel is therefore inappropriate here.

Also without merit is the Rasons' argument that due process requires the clock run as of the date of notice. Although the Tort Claims Act requires that the public entity provide notice of the rejection of a timely claim, or of denial of the application to file a late claim, there is no requirement that the notice be at a particular time. (§§ 911.8, 913, 915.4.) In contrast, when the public entity returns a claim because the claim was filed late, it must provide notice of that decision within 45 days. (§ 911.3.) After receiving such notice, a claimant may then file an application with the public entity for leave to file a late claim.

Where the public entity rejects a timely claim but is tardy in delivering notice, the claimant suffers no prejudice because the six-month limitation for filing suit does not begin to run until the notice is mailed or delivered. (§§ 913, 945.6, subd. (a)(1).) Such is not the case with denial of an application to file a late claim under section 911.4. The clock begins to run on the date that the application is denied, even though the notice is mailed or delivered at a later date. (§ 946.6, subd. (b); Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 5.57, p. 533; *Lineaweaver* v. *Southern California Rapid Transit Dist.* (1983) 139 Cal.App.3d 738, 739-740 [189 Cal.Rptr. 29].)

The Rasons raise a legitimate concern that section 946.6 can allow a public entity to ambush a claimant by intentionally or negligently delaying notice of denial of the application. The claims act requires that the public entity give notice of denial of the application. Yet a claimant who received

no notice by the 45th day could initially assume the public entity had taken no action, and that the 6-month period had started from the 45th day. If the claimant then received a tardy notice beyond the 45th day, he or she would then discover that the clock had begun ticking at an earlier time. Even if the claimant is held to inquiry notice and is under a duty to determine whether the agency had acted (see *Dowell* v. *County of Contra Costa* (1985) 173 Cal.App.3d 896, 901-902 [219 Cal.Rptr. 341]), a claimant could be prejudiced by the delay.

If such a delay was considerable, due process might estop the public entity from asserting that the six-month period ran from the date action was taken. For example, if notice of a denial is given five months and twenty-eight days later, absent unusual circumstances, the public entity would be estopped from blocking a claim due to the running of the six-month period. The claimant would be granted a reasonable period of time in which to file a petition. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 690 [37 Cal.Rptr. 46].)

■ The difference here, however, is that the delay between denial and notice was a short one, and not prejudicial. Although the notice arrived over a month after the Housing Authority denied the application, it was still within the 45-day period in which the Housing Authority could act. The notice stated that the six-month period began from the date of denial, June 18, which gave the Rasons nearly five months in which to file their section 946.6 petition. This comports with due process. (*Stanley* v. *County of San Francisco* (1975) 48 Cal.App.3d 575, 578-80 [121 Cal.Rptr. 842].)

Even though there is no due process violation here, we are concerned that the actual time provided a petitioner to file a section 946.6 petition may shrink or expand depending on the public entity's efficiency (or capriciousness) in providing notice. In 1970 the Legislature amended sections 945.6 and 913 to correct a similar discrepancy in the time allowed for filing an action against a public entity. A review of the legislative history fails to explain why section 946.6 was not similarly amended.

Prior to legislative action in 1970, section 945.6 provided that the limitations period for filing an action against a public entity began to run at the time the administrative body took action on the claim. This conformed with the limitation period for filing a section 946.6 petition. (See Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 946.6, p. 610. "The petition may be filed within six months after the application for leave to present a late claim is denied or deemed to be denied, *the same period of time specified in Section 945.6 for commencing legal action on a claim that has been denied or deemed denied on the merits*." Italics added.) The two

sections, 945.6 and 946.6, now differ as to when the six-month clock begins to run.

In 1968 the Law Revision Commission recognized the unfairness of allowing the clock to run when the public entity failed to give notice of its action or inaction on the claim. (See Recommendation Relating to Sovereign Immunity, No. 9, Statute of Limitations in Actions Against Public Entities and Public Employees (Sept. 1968) 9 Cal. Law Revision Com. Rep. (1968) pp. 55-56 (hereafter Recommendation Relating to Sovereign Immunity).)

The Legislature in 1970 adopted the reasoning of the Law Revision Commission and amended the Tort Claims Act so that an action may be commenced within six months after the date that notice of the rejection of the claim is personally delivered or deposited in the mail. (See Rep. of Assem. Com. on Judiciary, Assem. J., Feb. 18, 1970, 1 Assem. J. (1970 Reg. Sess.) p. 626; see §§ 913, 915.4, and 945.6 as amended by Stats. 1970, ch. 104, § 4, p. 323; §§ 5, 6, p. 324, respectively.) The rejected claimant thus would no longer be prejudiced by a late or undelivered notice.

Yet, for reasons unexplained by the legislative history, the Legislature did not also similarly amend section 946.6. The clock for filing a petition begins to run from the date of denial or "deemed" denial by the public entity, not from the date of personal delivery or mailing of the notice. What makes this legislative inaction peculiar is that the Legislature did amend section 911.8, governing notice of the public entity's action on an application for leave to file a late claim. (Stats. 1970, ch. 104, § 3, p. 323.) Notice of the public entity's action on such an application must conform with the personal delivery or mail requirements of section 915.4. Because the purpose of section 915.4 and the amended section 911.8 was to assure the uniformity of "the manner of giving all notices under this chapter" (See Recommendation Relating to Sovereign Immunity, *supra*, at p. 59), we are puzzled that the Legislature attached legal significance to receipt of one notice but not the other.

Later, in 1974, the Legislature added subsection (b) to section 911.8 requiring that the notice of denial of the application include a warning that the six-month time period for filing a petition begins on the date the application was denied. (See Historical Note, 32 West's Ann. Gov. Code (1980 ed.) § 911.8, p. 536.) We assume the Legislature means what it says, and we also assume it values uniformity in tort claims procedures and strives to fairly balance the rights of injured parties against those of public entities. The mystery of why the act protects a rejected claimant with a timely claim from the prejudicial effect of a tardy notice, but does not similarly protect a rejected applicant requesting leave to file an untimely claim, we leave to the

Legislature to explain. Better yet, we hope it will act to correct this deficiency.

■ The Rasons also contend that the statute of limitations was tolled pursuant to Insurance Code section 11583. That section is inapplicable, however, where the claimant is represented by counsel, as was Rason.

### III. *The Complaint*

The Rasons allege in their complaint for damages[3] that they fully complied with the requirements of the Tort Claims Act. (*Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 355 [138 Cal.Rptr. 20].) We think it appropriate here to discuss two issues related to the order dismissing the petition. One, are the Rasons collaterally estopped from alleging timely compliance with the Tort Claims Act? Two, was the complaint filed within the applicable statute of limitations?

### A. *Collateral Estoppel*

■ The order of dismissal does not estop the Rasons from filing a complaint in which they allege their claim was timely filed. Although that issue was raised in the section 946.6 petition, it was not adjudicated by the trial court. (*Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 253, p. 691.)

Normally a complaint for damages against a public entity may not be filed until the public entity acts on a timely claim or, where the claim was not timely and an application for leave to present a late claim is denied, until a court grants the claimant relief from the requirements of the Tort Claims Act. (§§ 945.4, 946.6.) Where, however, the claimant disputes the public entity's determination of untimeliness, the claimant must file a complaint for damages in order to raise this issue. (*Toscano* v. *County of Los Angeles, supra,* 92 Cal.App.3d at pp.782-783; *Rodriguez* v. *County of Los Angeles* (1985) 171 Cal.App.3d 171, 177 [217 Cal.Rptr. 69].) A trial court hearing a section 946.6 petition cannot consider whether a claim was timely, because that issue is not within the scope of the proceeding. (*Toscano* v. *County of Los Angeles, supra,* 92 Cal.App.3d at p.782; § 946.6, subd. (c).) The Rasons therefore could not raise the issue of timeliness through the late claim procedure.[4]

---

[3] We have taken judicial notice of Santa Barbara Superior Court case No. 169086 (1987). (Evid. Code, §§ 452, 459.)

[4] In *Gurrola* v. *County of Los Angeles* (1984) 153 Cal.App.3d 145 [200 Cal.Rptr. 157], a case that is sui generis, in a section 946.6 hearing the trial court did determine that a claim

We agree with the Rasons that their error was attributable in part to the section 911.3 notice advising them that their *"only recourse at this time is to apply without delay"* for leave to present a late claim. (Italics added.) Although this warning is required by statute and preserves the Housing Authority's position on the issue (see *Rodriguez v. County of Los Angeles, supra,* 171 Cal.App.3d at p. 177; § 911.3), it lays a trap for the unwary claimant who disputes the public entity's determination of timeliness. For such a claimant, the late claims procedure is not the "only recourse;" in fact it is no recourse because the claimant cannot argue timeliness in a section 911.4 application nor in a section 946.6 petition. (*Toscano v. County of Los Angeles, supra,* 92 Cal.App.3d 775, 782-783; § 911.4.)

The Tort Claims Act, exhaustive as it is, nowhere expressly instructs a claimant how to dispute a public entity's determination that the claim was untimely. The language in the notice could have led the Rasons to mistakenly conclude that in the petition to file a late claim they could argue both the issue of timeliness, and in the alternative, the issue of excuse to file a late claim.

■ Since this approach is not available where a public entity returns a claim as untimely pursuant to section 911.3, the cautious claimant who wishes to preserve both issues of timeliness and of excusable lateness must file a complaint in court and a section 911.4 application with the public entity. (See, e.g., *Scott v. County of Los Angeles* (1977) 73 Cal.App.3d 476 [140 Cal.Rptr. 785]; *Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841 [143 Cal.Rptr. 295]; *Jenkins v. County of Contra Costa* (1985) 167 Cal.App.3d 152 [213 Cal.Rptr. 126].) The claimant is therefore not forced to make the agonizing choice between two exclusive remedies.[5]

### B.  *Statute of Limitations on the Complaint*

A suit against a public agency must be filed within six months of a properly noticed rejection. (§ 945.6, subd. (a)(1).) Here, the Rasons filed

was not timely. The appellate court found that it was improper for the court to consider this issue. Nevertheless, this finding served to estop petitioner from alleging compliance with the Government Code time requirements in his complaint filed with the superior court.

This unusual result came about because the claimant, who had first raised the issue of timeliness in the section 946.6 hearing, failed to appeal the court's finding. Having already raised the issue, he was estopped from raising it again in a later proceeding. Because the ruling was never successfully challenged, it was presumptively valid, even though erroneous. (*Id.* at pp. 150-151.)

[5] We disagree with the gratuitous dicta in footnote 5 in *Reyes v. County of Los Angeles* (1988) 197 Cal.App.3d 584, 596 [243 Cal.Rptr. 35], which suggests that the complainant is held to an exclusive choice of remedies in deciding between a section section 946.6 petition or a complaint for damages.

Life would be easier for litigants, attorneys, public agencies and the courts if a section 946.6 petitioner were allowed to argue timeliness.

their complaint on November 30, 1987, more than six months after the claim was found to be untimely. An issue may therefore arise concerning whether the Rasons filed their complaint within the requisite time period. If the rejection is not properly noticed pursuant to section 913, the time for filing suit is extended to two years from the date of accrual of the cause of action. (§ 945.6, subd. (a)(2).) Section 913 requires that the entity tell the complainant, among other things, that he or she has six months from the date the notice is personally delivered or deposited in the mail to file a court action.

█ Since the Housing Authority never formally rejected the claim, it was not required to present the notice of rejection pursuant to section 913. In some circumstances, however, the public entity's determination of untimeliness may be construed by the court to be a rejection of the claim pursuant to section 912.4, and the failure to give proper notice of the rejection will extend the statute of limitations.

Such extraordinary relief was provided in *Scott* v. *County of Los Angeles, supra,* 73 Cal.App.3d 476, 481, where the claim was deemed denied by operation of law, but the notice from the county stated that the claim was untimely. A second claim was filed, which the county treated as an application to file a late claim under section 911.4. This claim was rejected. The claimant then filed a petition to file a late claim with the court pursuant to section 946.6, which was denied. The claimant then filed a complaint for damages. As in the instant case, the appeal in *Scott* was from the denial of the section 946.6 petition. (*Id.* at p. 480.)

The *Scott* court held that because the original claim on its face alleged facts which if true made the claim timely, the county's determination that the claim was untimely should be construed as an outright rejection. (*Scott* v. *County of Los Angeles, supra,* 73 Cal.App.3d at p. 482.) The section 946.6 petition was therefore unnecessary. The county's failure to provide the claimant with the notice and warning to file within six months required by section 913, was held to extend the period for filing the complaint to two years from the accrual of the cause of action. (*Ibid.*)

The court, of course, still makes its determination of the accrual date and the timeliness of the claim. The Tort Claims Act "cannot be viewed as giving the governmental entity the power to determine for itself factual questions related to the statute of limitations nor does it give the power to the governmental entity, by the manner in which it treats the claim, i.e., by rejecting it as untimely rather than on its merits, to deny to a claimant his or her right to a jury trial on disputed factual issues." (*Ibid.*)

Similar relief was provided in *Jenkins* v. *County of Contra Costa, supra,* 167 Cal.App.3d 152, and in *Wheeler* v. *County of San Bernardino, supra,* 76 Cal.App.3d 841. In those cases the appellate courts concluded that where the public entity erroneously returns a timely claim as untimely, making the late claims procedure unnecessary, the entity's action will be construed as an outright rejection of the claim. The statute of limitations for filing the complaint was extended to two years because the rejection was not properly noticed pursuant to section 913.

Such relief, for example, should be accorded the Rasons if the trial court finds that 1) the claim filed with the Housing Authority shows facts on its face which, if true, would make the claim timely, and 2) the Housing Authority misled the Rasons into pursuing the late claims procedure. (See *Rodriguez* v. *County of Los Angeles, supra,* 171 Cal.App.3d at p. 178.) The trial court should then, of course, determine the date of accrual of the cause of action in order to ascertain if the claim and the complaint were timely filed. These procedures assure that the claimant is not penalized for the public entity's error or for relying on an incorrect or misleading notice.

During a hearing concerning the section 946.6 petition, the trial court here said that *Scott* v. *County of Los Angeles, supra,* 73 Cal.App.3d 476, was "legislated out of existence" by section 911.3. We disagree. The extraordinary remedy provided in *Scott* is unaffected by section 911.3, especially where, as here, the claimant contends that the section 911.3 notice itself was misleading.

■ Section 911.3 sets forth the notice procedure the public entity must follow when it determines that a claim has not been timely filed. Prior to the Legislature's adoption of section 911.3, the public entity was not required to specify the reason for rejection when the claim was returned as untimely. (See *Dujardin* v. *Ventura County Gen. Hosp., supra,* 69 Cal.App. 3d 350, 360; *McLaughlin* v. *Superior Court* (1972) 29 Cal.App.3d 35, 38-39 [105 Cal.Rptr. 384]; Review of Selected 1983 California Legislation (1983) 15 Pacific L.J. 689.) In those cases, the claimant was misled as to the available remedy when the public entity returned the claim as "rejected" when in fact it was returned as untimely.

The purpose of the section 911.3 notice is to assure that the claimant distinguishes between a claim rejected on its merits and one returned as untimely. The claimant thus knows which procedure to pursue. (See Notice of Rejection of Late Claim Against Public Entity (Nov. 1982) 19 Cal. Law Revision Com. Rep. (1982) pp. 2251, 2255.)

In *Scott,* the claimant was misled by the public entity's error as to whether the claim was timely. Since the claimant was not misled by a lack of

specific notice, section 911.3 would not have been curative. Here, the Rasons contend that a similar error was made, and argue that the very language of the section 911.3 notice misled them as to the proper remedial procedure to follow when the public entity so errs.

The judgment of dismissal is affirmed without prejudice to filing of the complaint.

The parties are to bear their own costs on appeal.

Stone, P. J., and Abbe, J., concurred.