Destiny OVANDO, et al., Plaintiffs,

v.

CITY OF LOS ANGELES, et al., Defendants.

No. CV99–11835–GAF(AJWx).

United States District Court, C.D. California.

March 28, 2000.

Gregory A. Yates, Beverly Hills, CA, for plaintiffs.

James K. Hahn, City Attorney, Cecil Marr, Senior Asst. County Atty., Don W. Vincent, Supervising Asst. City Atty., Paul N. Paquette, Deputy City Atty., Los Angeles, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND CERTIFYING THIS ORDER FOR INTERLOCUTORY APPEAL [FED.R.CIV.P. 12(b)(6); 28 U.S.C. § 1292(B)]

FEESS, District Judge.

## I.

## INTRODUCTION

This is a lawsuit arising out of what has become known in both the local and national media as the Los Angeles Police Department ("LAPD") "Rampart" scandal. First exposed by former LAPD Officer Rafael Perez ("Perez"), one of the named defendants in this case, the events involved in the Rampart affair reportedly include a wide variety of misconduct by LAPD officers including the shooting of unarmed suspects, the planting of evidence to justify those shootings, the preparation of false police reports to cover up the misconduct and the presentation of perjured testimony resulting in the false convictions and imprisonment of a number of innocent citizens.

One of the alleged victims of that police misconduct is Javier Ovando ("Ovando") who, while unarmed and in police custody, was allegedly shot several times. Ovando was then arrested and charged with several offenses, including two counts of assault

on a police officer with a firearm. Ovando was tried and convicted of those offenses, among others, and sentenced to 23 years, four months in prison, principally on the basis of testimony by LAPD officers.

After Perez's revelations to prosecutors, the Los Angeles District Attorney's Office identified Ovando as one of the victims of LAPD misconduct, petitioned the state court for a writ of habeas corpus and obtained Ovando's release. Ovando, who is now a paraplegic and has allegedly suffered severe, permanent, brain damage has filed a suit for damages under 42 U.S.C. Section 1983 alleging numerous violations of his constitutional rights. The present lawsuit is a related action brought by his daughter Destiny Ovando ("Destiny") and her mother, Monique Valenzuela ("Valenzuela").

In this case, Destiny, who is two years old, has brought civil rights and negligence claims against the City of Los Angeles and various members of the LAPD[1] for the loss of association with her father. Valenzuela has brought intentional and negligent infliction of emotional distress claims against defendants arising out of the same events.

Defendants City of Los Angeles, Richard Riordan, Bernard Parks, Dennis Wuethrich, and Willie Williams ("defendants") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims alleging (1) that the federal claims because Destiny's association with her father has not been permanently severed and (2) that the state law claims were not timely filed with the City pursuant to the *California Government Code.*

## II.

## FACTUAL BACKGROUND

In assessing the merits of the Rule 12(b)(6) motion, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to

be drawn therefrom. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980) (complaint must be read in light most favorable to plaintiff). Thus, the following facts are assumed to be true for purposes of assessing the present motion.

### A. *The LAPD Used Excessive Force on Javier Ovando*

In 1996, Ovando lived an apartment building that was being used by the LAPD's anti-gang unit ("CRASH") as an "observation post." (FAC, ¶ 21). In October, Officers Rafael Perez and Nino Durden demanded entry into Ovando's apartment for no apparent reason. A friend of Ovando's who was in the apartment was told to leave. The officers searched the apartment for drugs, but found none. Nevertheless, they handcuffed Ovando and took him to another apartment. (FAC, ¶¶ 20–23).

Durden and Ovando began arguing. Although Ovando was unarmed, Durden pulled out his service weapon and shot Ovando in the chest. Seeing Durden pull his gun, Perez also pulled out his service weapon and shot Ovando in the chest. The officers then held Ovando upright and shot him in the head. After the shooting, Durden placed a semi-automatic rifle near Ovando so that it would appear that Ovando was armed when he was shot.[2] (FAC, ¶¶ 20–23). The shooting left Ovando with severe mental and physical injuries, including paraplegia. (FAC, ¶ 35).

### B. *Ovando Was Arrested and Convicted Based on the False Testimony of Perez and Durden*

Ovando was charged with two counts of assault with a firearm on a police officer and one count of exhibiting a firearm in the presence of a police officer. (FAC, ¶ 19). At trial, the primary witnesses against him were Perez and Durden.

---

1. In both their individual and official capacities. (First Amended Complaint ("FAC"), ¶ 9).

2. The rifle had been taken in an earlier gang sweep and Durden had previously filed away the serial number. (FAC, ¶ 21)

Based on the officers' false testimony, Ovando was convicted and sentenced to 23 years, four months in state prison. (FAC, ¶ 19).

### C. Valenzuela's "Presence" at the Shooting and the Trial

At the time of the shooting, Valenzuela was outside the apartment building. (FAC, ¶ 73). After being released, Ovando's friend came down and told her that the LAPD had entered the apartment and released him. Valenzuela heard gunshots. Shortly thereafter, Valenzuela saw Ovando being brought out on a gurney. At the time, Valenzuela was pregnant with Ovando's daughter, Destiny. (FAC, ¶ 173).

Valenzuela was also present during Ovando's arraignment, trial and sentencing, and witnessed the false evidence against Ovando. (FAC, ¶ 74).

### D. Plaintiffs Did Not Learn the True Events Until the District Attorney's Office Filed a Habeas Corpus Petition to Release Ovando

In August 1998, Perez was charged with 10 felony counts involving theft of cocaine. As part of his plea negotiations, Perez admitted that, in October 1996, he and his partner shot an unarmed man and planted evidence. (FAC, ¶ 20). Based on this information, the District Attorney's Office conducted an investigation and determined that the unarmed man was Ovando. Perez's subsequent statement under oath revealed that Ovando had been framed and that Perez committed perjury. Based on this evidence, the District Attorney's Office filed a Petition for Writ of Habeas Corpus on or about September 16, 1999. (FAC, ¶¶ 20–27). Ovando's conviction was subsequently "expunged, overturned and/or invalidated" and he was released

after serving two years, eleven months in prison. (FAC, ¶ 27).

### E. Plaintiffs' Claims To The City of Los Angeles Are Returned

Pursuant to the *California Government Code*, Destiny filed her tort claim with the City Clerk for the City of Los Angeles on September 28, 1999. That claim was "returned ... without action being taken" on December 3, 1999, because the claim was not presented within one year of the accrual of the cause of action. (FAC, ¶ 14).

On November 8, 1999, Valenzuela filed her tort claim with the City Clerk for the City of Los Angeles. That claim was likewise "returned ... without action being taken" on December 3, 1999, because the claim was not presented within one year of the accrual of the cause of action.[3] (FAC, ¶ 15).

### F. Plaintiffs' Causes of Action

#### 1. Plaintiff Destiny Ovando

Destiny alleges several federal causes of action for deprivation of her right of association with her father under 42 U.S.C. Sections 1983, 1985, 1986 and 1988. She also alleges a supplemental state cause of action of negligence.

#### 2. Plaintiff Monique Valenzuela

Valenzuela alleges supplemental state causes of action for intentional and negligent infliction of emotional distress.

### III.

### LEGAL ANALYSIS[4]

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different

---

**3.** The City calculated the accrual date in both cases to be October 12, 1996. (FAC, ¶¶ 14–15)

**4.** Defendants assert that plaintiffs' opposition should not be considered because it was not filed at least 14 days before the February 28, 2000 hearing date. However, on January 27, 2000 (prior to the deadline for filing the oppo-

sition), the Court vacated the hearing date. The due date for the opposition was thereby continued to fourteen days before the new hearing date. Local Rule 7.8. The opposition was thus timely filed.

legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985). On the other hand, dismissal is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson* ), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269, (1990). Viewing the First Amended Complaint in light of that test and current Ninth Circuit law, Destiny has stated at least some theories under which she can obtain relief.

A. *Destiny Ovando's Federal Claims for Loss of Familial Association With Her Father*

▮ In order to state a claim under Section 1983, plaintiff must allege that (1) the conduct complained of was committed under color of state law, and (2) that the conduct deprived plaintiff of rights and liberties secured by the Constitution. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Here, there is little question that the acts by police officers were committed under color of state law. *See Smith v. City of Fontana,* 818 F.2d 1411, 1416 n. 5 (9th Cir.), *cert. denied* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), *overruled on other grounds Hodgers–Durgin v. De La Vina,* 199 F.3d 1037 (9th Cir.1999) (police officers who "were clothed with the legitimacy of the government and were purporting to act thereunder" were acting "under the color of state law") (internal quotations omitted). The FAC alleges that the officers, acting under color of authority, seized Ovando, removed him from his apartment, took him to another location within the building and shot him. The complaint is clearly sufficient as to this element.

The real question is whether, and to what extent, Destiny has a cause of action under 42 U.S.C. Section 1983. In other words, does she have a recognized interest, protected under the Constitution and laws of the United States, that she may assert in a court of law under Section 1983.

**1. Rights Secured By the First Amendment**

In her complaint, Destiny alleges that defendants interfered with her right to free association guaranteed by the First Amendment as well as the right to familial companionship guaranteed by the Due Process Clause of the Fourteenth Amendment. (FAC, ¶¶ 33 and 38).

▮ The Supreme Court has recognized two types of free association rights: the right to intimate relationships and the right to associate for the purposes of engaging in the activities set forth in the First Amendment; *i.e.* speaking, worshiping, and petitioning the government. *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984); *IDK, Inc. v. County of Clark,* 836 F.2d 1185, 1192 (9th Cir.1988). The former is protected as a personal liberty under the Fourteenth Amendment, while the latter is protected by the First Amendment. *IDK,* 836 F.2d at 1191–92. Here, Destiny does not, and by virtue of her age could not, allege that the State interfered with her right to associate for expressive purposes. Accordingly, defendants' motion to dismiss is GRANTED to the extent Destiny seeks to vindicate a First Amendment right.

**2. Substantive Due Process[5] Protection for Parent–Child Relationship**

a. *Smith v. City of Fontana*

▮ Thirteen years ago, the Ninth Circuit squarely addressed the question of

5. Whether State interference with a liberty interest implicates a procedural due process or a substantive due process right depends on whether the interference was for the purpose of furthering a legitimate governmental interest (procedural) or was " 'for the purpose of oppression.' " *Smith,* 818 F.2d at 1419 (quoting *Daniels,* 474 U.S. at 331, 106 S.Ct. at 665, 88 L.Ed.2d 662). Interfering with liberty in-

whether a child has an associational right with her parents that is secured under the substantive due process protections of the Fourteenth Amendment. *Smith*, 818 F.2d at 1418. In *Smith*, the Ninth Circuit was confronted by a case in which the children of a man shot and killed by police officers brought suit under Section 1983 alleging a substantive due process violation arising from the deprivation of his comfort and society. The Court noted that "[t]his claim raises the threshold question whether the children's interest in the continued companionship and society of their father is a cognizable liberty interest under the due process clause." After a review of its precedents holding that *parents* have a constitutionally protected liberty interest in the custody, companionship and society of their children, *Smith*, 818 F.2d at 1417–18 (citing *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.1985)), the Court concluded:

> We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship.

*Id.* at 1418.[6] Indeed, the Court noted that the legislative history of the predecessor to Section 1983 suggested that one of its purposes was to protect children whose parents were injured as the result of constitutional deprivations perpetrated by or with the acquiescence of the State. *Id.* at 1419.

■ Thus, the law in this circuit is quite clear: a child has a substantive due process right in her relationship with her parents which may be vindicated through a Section 1983 action. The question defendants present relates to the scope of that right.

### b. *The Cause of Action is not Limited to Wrongful Death Cases*

Destiny asserts that defendants violated her constitutional rights to familial association in two ways: (1) by wrongfully imprisoning her father for almost three years and (2) by permanently physically and mentally crippling him.[7] Defendants contend that this is not enough. They argue that unless the deprivation is "permanent," that is, unless the child's parent is killed giving rise to a wrongful death suit, a child has no cognizable substantive due process claim under Section 1983. From this premise, defendants argue that Destiny cannot state a claim because any loss she may have suffered was only temporary given that her father served only a term of years in prison and has now been released. (Defendants' Motion, pp. 4–6) (citing *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.1987) (children have cognizable claim for loss of association with father

---

terests by way of excessive force is "the very sort of affirmative abuse of government power which the substantive protections of the due process clause are designed to prevent." *Id.* at 1420. Accordingly, this Court adopts the substantive due process analysis to determine whether Destiny has stated a cause of action.

**6.** From the opinion it appears that defendants in *Smith* argued that the parental substantive due process right arose from the custodial interest that a parent has in a child. The Court, however, rejected that limitation, noting that in *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir.1986), a case involving the death of a grown child at the hands of police officers, it recognized a substantive pro-

cess right in the familial relationship between a parent and a grown child in addition to the custodial rights that a parent has in a minor child. *Smith*, 818 F.2d at 1419. *Strandberg* permitted the parents' civil rights action to go forward even though the custodial element was no longer implicated.

**7.** That Destiny was not yet born at the time of the shooting or the imprisonment is not relevant because the injury for which she seeks vindication arose at birth. *Crumpton v. Gates*, 947 F.2d 1418 (9th Cir.1991) (child may bring Section 1983 action based on unconstitutional killing of parent prior to child's birth).

wrongly killed by police) and *Morrison v. Jones*, 607 F.2d 1269 (9th Cir.), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980) (mother has cognizable claim for loss of association due to deportation of son)).

 Defendants' argument finds no support in the case law. There is nothing in *Smith* that suggests that the holding is limited to wrongful death cases. Rather, the Court held simply that the liberty interest protected by the Fourteenth Amendment is the right to be free from State interference with the companionship and society of one's parent.[8] *Smith*, 818 F.2d at 1419. Nowhere in its opinion did the Court indicate that a deprivation of a duration shorter than the entirety of the child's life was not a "deprivation" cognizable under Section 1983, and this Court can find no principled basis for drawing such a distinction. Here, the unlawful imprisonment of Destiny's father constituted a complete deprivation of his companionship and society for the term of his imprisonment. While Destiny's father's absence may have been "temporary" in the sense that it did not last for the entirety of her life, Destiny's relationship with her father was permanently severed during that interval—those three years can never be retrieved. In that sense it was a temporary, but total, deprivation of a right recognized under the Fourteenth Amendment. *See Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969) (prejudgment garnishment of wages without notice and prior hearing violated due process where deprivation of property is temporary but total).

### c. *Temporary Deprivations Implicate Due Process*

Moreover, defendants' suggestion that a "temporary" deprivation of a right does not implicate due process is contradicted by procedural due process jurisprudence.

Courts have held that procedural due process rights apply to the separation of parent and child, even if the separation is only temporary. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1244 (7th Cir.1984) (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Moreover, in cases that involve only property rights rather than the intimate familial bonds at issue here, the Supreme Court has concluded that even temporary nonphysical impairments implicate the due process clause. *Connecticut v. Doehr*, 501 U.S. 1, 11–12, 111 S.Ct. 2105, 2112–13, 115 L.Ed.2d 1 (1991). In *Doehr*, a procedural due process case involving a pre-judgment attachment statute, the State argued that its statute did not violate due process because it did not physically deprive the property owner of possession, but rather created a lien against the property. While that may cloud title and prevent a transfer or impact on the ability to obtain credit, the state argued, these effects were insufficient to constitute a deprivation that implicated the Due Process clause. The Supreme Court disagreed:

> [T]he State correctly points out that [the effects of the attachment] do not amount to a complete, physical, or permanent deprivation of real property; their impact is less than the perhaps temporary total deprivation of household goods or wages. [Citation.] But the Court has never held that only such extreme deprivations trigger due process concern. [Citation.] To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.

*Id.;* see also *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (due process violation found in state re-

---

**8.** Destiny is not required to show that defendants had an intention to deprive her of her familial association rights in order to state a cause of action. *Smith*, 818 F.2d at 1420 n. 12 (rejecting Tenth Circuit's requirement that plaintiff show intention to interfere with familial companionship).

**1020**

plevin statute permitting seizure of goods through ex parte application process).

To summarize, *Smith* holds that a child has a substantive due process right in the society and comfort of a parent; *Bell* and other cases hold that State efforts to separate parent and child require compliance with procedural due process requirements; and *Connecticut v. Doehr* requires compliance with procedural due process in cases where there is only an intangible impairment of a property right. It would be incongruous to hold that a temporary interference with a property interest—placing a lien on property during the pendency of a lawsuit—and that a temporary separation of parent and child to further a legitimate governmental interest are sufficient to raise due process concerns, but that a separation imposed through the illegitimate exercise of the State's power does not. Under existing law, the Court concludes that Destiny has substantive due process rights that can be vindicated in this case.

### d. *Destiny's Claims for Relief*

Destiny asserts her substantive due process right for the deprivation of her father's society and comfort while he was imprisoned. The Court concludes that the authorities cited above clearly establish a right to assert such a claim. Thus, as to this aspect of her complaint, the Motion to Dismiss is DENIED.

In addition, Destiny also alleges that her rights to familial association with her father have been permanently impaired because of the severe, permanent physical and mental injuries he has suffered at the hands of the police. She contends that she may seek redress for this impairment as a violation of her substantive due process rights.

First, the Court concludes that Destiny has no standing to bring a cause of action for the physical injuries simply because her father was injured. The right to be free from excessive force during a seizure is found exclusively in the Fourth Amendment. *Ward v. City of San Jose,*

967 F.2d 280, 284–85 (9th Cir.1991) (reversible error to give substantive due process instruction in excessive force case). Because Fourth Amendment rights are personal, Destiny could not state a claim for her father's injuries. *Smith,* 818 F.2d at 1417 (children have no cognizable claim for use of excessive force after father was wrongfully beaten and shot by police).

However, that is not the end of the discussion. The more perplexing question is whether a cause of action under the due process clause arises where the parent and child are not physically separated but where, due to injuries suffered at the hands of police officials, the parent can no longer provide the society and comfort ordinarily found in such a relationship. At the hearing on this motion the Court expressed doubt that Destiny could bring such a claim; the Court has reconsidered in view of the arguments presented on behalf of Destiny.

Under *Smith,* it is clear that a child has a liberty interest, protected by the Fourteenth Amendment, to be free from State interference with the companionship and society of her parent. *Smith,* 818 F.2d at 1418–19. The basis of the child's substantive due process right arises from the recognition that "individuals draw much of their emotional enrichment from close ties with others" and that familial rights must be protected in order to "safeguard[ ] the ability independently to define one's identity . . . ." *Roberts,* 468 U.S. at 619, 104 S.Ct. at 3250, 82 L.Ed.2d 462. Viewed in light of that rationale, an injury which placed a parent into a coma or a "vegetative" state would be no different in effect than the impact of the false imprisonment of a parent. Indeed, if such an injury were permanent, it would have a greater impact than, say, three years in prison.

On the other hand, not all injuries create a loss of companionship. For example, had defendants' excessive force merely broken Ovando's arm, there would be little question that Destiny would not have stated a claim for violation of her right of

familial association. Indeed, the Court doubts that physical injury to a parent, even injury that permanently impairs a parent's ability to walk or engage in other physical activities, provides a basis for a substantive due process claim on behalf of the children.[9] It does not necessarily follow that physical injury precluding participation in certain activities constitutes an interference with the most personal of *emotional* bonds. Here, Ovando's paraplegia alone would not prevent Destiny from maintaining an "emotionally enriching" tie with her father.

Injuries that impair the mental functioning of a parent, however, bear directly on the question of the ability of the child to maintain a relationship with her parent. In this case, Destiny has alleged that defendants' excessive force caused Ovando "severe physical and *mental* injuries...." (FAC, ¶ 35) (emphasis added). Because injury to a parent's mental capacity can infringe on a child's ability to create and maintain the emotional bond protected by the Fourteenth Amendment, the Court now concludes that Destiny has pleaded a cause of action based on Ovando's mental injuries. The Court recognizes that whether there has been an interference with, or deprivation of, this right may turn on the degree to which the parent has suffered impairment at the hands of the State. But that is a fact question to be resolved either at trial or, if the facts are not in dispute, through summary judgment; it is not a matter that ought to be resolved at this early stage as a matter of law.

Accordingly, as to the claim that Destiny's associational rights under the Fourteenth Amendment have been violated due to the physical injuries Ovando sustained, the motion is GRANTED. With respect to the claim that Ovando sustained mental injuries that have impaired the child-par-

ent relationship, the Court concludes that Destiny may pursue this claim as a substantive due process violation and defendants' Motion to Dismiss is therefore DENIED.

### B. *Plaintiffs' Supplemental State Claims*

In addition to her Section 1983 causes of action, Destiny has asserted a supplemental state cause of action for negligence. Valenzuela has alleged supplemental state causes of action for intentional and negligent infliction of emotional distress. Defendants move to dismiss based on their allegations that plaintiffs failed to comply with the requirements of the California Tort Claims Act ("CTCA").

### 1. *Procedural Requirements of the CTCA*

Before a complaint for money damages due to the death or injury to a person may be brought against a public agency, the injured party must first file a claim with the appropriate public entity within six months of the claim's accrual. Cal. Gov't Code § 911.2. The purpose of the CTCA is to provide the public entity with notice of the claim and sufficient information to allow it to investigate and settle the matter, if possible, without litigation. *Phillips v. Desert Hosp. Dist.*, 49 Cal.3d 699, 705, 263 Cal.Rptr. 119, 123, 780 P.2d 349 (1989). As such, the claim procedure is designed to promote resolution of disputes, but does not permit the agency to decide *whether* a suit may be filed. *Id.* at 709, 263 Cal.Rptr. 119, 780 P.2d 349,. These procedural requirements are both elements of the tort cause of action against a public entity and part of a statutory framework that provides a limited waiver of sovereign immunity. *United States v. California*, 655 F.2d 914, 918 (9th Cir. 1980). Accordingly, compliance with the

---

9. Contrary to plaintiff's arguments, Ovando's physical injuries alone do not render him unable to bond with his daughter through play (though the games may be different) and his wheelchair does not render him unable to share her joy as he accompanies her down the aisle on her wedding day. The wheelchair does not destroy her ability to draw emotional comfort and enrichment from close ties with her father, which is the interest protected under substantive due process.

procedural requirements of the CTCA is a necessary prerequisite to suing a public agency. Cal. Gov't Code §§ 815, 945.4; *Hernandez v. McClanahan,* 996 F.Supp. 975, 977 (N.D.Cal.1998).

If a timely filed claim is rejected, the claimant may file suit for damages. Cal. Gov't Code § 945.4. If an untimely claim is rejected due to untimeliness, the claimant may file an application to the public agency for leave to present the late claim. Cal. Gov't Code § 911.4. If that application is denied, the claimant's recourse is to file a petition with a competent court for relief from the requirements of the CTCA. Cal. Gov't Code § 946.6. "The procedure set forth in section 946.6 is simply an avenue of relief similar to Code of Civil Procedure section 473 in providing relief from default [citation] and is not designed to resolve the issue of actual compliance with the claim filing requirements." *Ngo v. County of Los Angeles,* 207 Cal.App.3d 946, 951, 255 Cal.Rptr. 140 (1989).

### 2. The Court's Subject Matter Jurisdiction to Determine the Timeliness of Plaintiffs' Claims

There is an important distinction between petitions for leave to file a late claim pursuant to Cal. Gov't Code § 946.6 and disputes as to whether a claim is in fact timely, and that distinction bears on this Court's subject matter jurisdiction.

 If the complainant concedes the date of accrual of the cause of action and concedes that the claim was not presented to the appropriate agency within six months of the accrual, then recourse must be sought under Section 946.6 as discussed. The question presented by a Section 946.6 petition is whether the claimant should be relieved of her obligations under the CTCA and, because it is a question separate from the merits, it is not properly within a federal court's subject matter jurisdiction. *Luers v. Smith,* 941 F.Supp. 105, 107–08 (C.D.Cal.1996); ac-

cord *Hernandez,* 996 F.Supp. at 978 (federal courts do not have jurisdiction over whether state will waive its sovereign immunity and permit litigation of untimely claim). However, where there is a dispute regarding the public entity's finding of untimeliness, the claimant's recourse is to file a complaint on the merits. *Ngo,* 207 Cal. App.3d at 948–51, 255 Cal.Rptr. 140; *Rason v. Santa Barbara City Hous. Auth.,* 201 Cal.App.3d 817, 827, 247 Cal.Rptr. 492 (1988). The issue of timeliness can then be raised in the form of demurrer, motion for summary judgment, motion for judgment on the pleadings or motion to strike. *Toscano v. County of Los Angeles Sheriff's Dept.,* 92 Cal.App.3d 775, 783, 155 Cal. Rptr. 146 (1979). A dispute over when a claim accrued is a question of whether the claimant has complied with the CTCA and is within a federal court's jurisdiction. *See Hernandez,* 996 F.Supp. at 979.

Destiny Ovando filed her claim with the City of Los Angeles on or about September 28, 1999, and Monique Valenzuela filed her claims with the City of Los Angeles on or about November 8, 1999. Because the City determined that plaintiffs' causes of action accrued on October 12, 1996, it returned the claims as untimely. However, plaintiffs assert that their causes of action did not accrue until September 16, 1999—the date the District Attorney's habeas corpus petition brought defendants' unlawful activities to light—and thus their petitions were filed within the six month statute of limitations period provided by Government Code § 911.2. Because plaintiffs raise the question of whether their claims are timely, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate the issue in the present lawsuit.[10]

### 3. Plaintiffs Claims Are Not Barred By The Statute of Limitations

Under the CTCA, a cause of action accrues on the same date it would be deemed

---

**10.** After the Court prepared this order, it received a supplemental memorandum from plaintiff on this issue. The memorandum was not requested and was not considered by the Court.

to have accrued within the meaning of the otherwise applicable statute of limitation. Cal. Gov't Code § 901. Defendants assert that plaintiffs failed to state a cause of action because their claims were not brought within the six month statute of limitations period. (Defendants' Motion pp. 6–8). Because under the CTCA the statute of limitations is an element of the cause of action, *see United States v. California*, 655 F.2d at 918, a motion to dismiss is an appropriate vehicle to attack the timeliness of the claim. *See Toscano*, 92 Cal.App.3d at 783, 155 Cal.Rptr. 146.

### a. *Destiny Ovando's Negligence Cause of Action Is Not Time–Barred*

 Destiny alleges that defendants were negligent in refraining from committing unlawful acts which would violate her constitutional rights. Usually a cause of action accrues at the time of injury. *Bastian v. County of San Luis Obispo*, 199 Cal.App.3d 520, 527, 245 Cal. Rptr. 78, 80 (1988). However, under certain circumstances, courts have held that the cause of action accrues at the time " 'plaintiffs became aware of defendant's negligence as a cause, or could have reasonably become so aware through the exercise of reasonable diligence.' " *Id.* (quoting *Leaf v. City of San Mateo*, 104 Cal. App.3d 398, 408, 163 Cal.Rptr. 711 (1980)). The purpose of the delayed discovery rule is to protect those "blamelessly ignorant" of their cause of action. *Leaf*, 104 Cal. App.3d at 408, 163 Cal.Rptr. 711. Thus, the delayed discovery principle may be applied when the plaintiffs neither had information of the circumstances sufficient to put a reasonable person on inquiry notice nor had the opportunity to obtain such knowledge from sources available upon reasonable investigation. *Bastian*, 199 Cal.App.3d at 527, 245 Cal.Rptr. at 81 (applying delayed discovery to CTCA claim). Once the elements of belated discovery are pleaded, the question of whether plaintiffs have exercised due diligence in discovering negligence is one of fact. *Id.*

 Here, Destiny was injured, if at all, on the day she was born.[11] *Crumpton v. Gates*, 947 F.2d 1418 (9th Cir.1991). However, she had no information regarding the allegedly negligent conduct until August or September 1999 when Perez was arrested and began revealing defendants' illegal actions.[12] Indeed, the allegations of the FAC, which must be accepted as true for present purposes, states that the officers involved in the incident in issue concealed and covered up their tortious conduct, which led to Ovando's conviction and imprisonment. Thus, it is the misconduct of the officers itself that concealed the existence of a tort claim against the City until Perez's recent revelation.[13] On this record the Court finds that Destiny has alleged sufficient facts to raise the issue of delayed discovery and thus has complied with the limitations element set forth in the CTCA for the purposes of pleading. Whether the rule should apply is a question of fact not to be determined by the Court at this time.

Accordingly, defendants' Motion to Dismiss the Fourth Cause of Action is DENIED.

### b. *Defendants Are Equitably Estopped From Asserting The Statute Of Limitations on Valenzuela's Causes of Action*

Valenzuela asserts claims for intentional and negligent infliction of emotional distress as a result of her "bystander" injuries when Ovando was shot and when perjurious testimony was presented against him. At all times relevant in the com-

---

11. May 3, 1997. (FAC, ¶ 18).

12. Because Destiny's claim was filed on September 28, 1999, it is not necessary for the Court to determine the exact date of her notice.

13. Accordingly, even if Destiny should have known about her cause of action, defendants are equitably estopped from raising the statute of limitations defense. *See* Part III.B.3.b.

plaint, Valenzuela was pregnant with Ovando's child. (FAC, ¶¶ 73–74).

■ A claim based on the theory of "bystander" emotional distress accrues when a plaintiff (1) is closely related to injury victim; (2) is present at the scene of the injury-producing event and is aware that the victim is being injured; and (3) suffers emotional distress beyond that which would be anticipated in a disinterested witness. *Campanano v. California Medical Center*, 38 Cal.App.4th 1322, 1328, 45 Cal.Rptr.2d 606, 609 (1995) (negligent infliction of emotional distress); *accord Cantu v. Resolution Trust Corp.*, 4 Cal. App.4th 857, 889, 6 Cal.Rptr.2d 151, 169 (1992) (cause of action for intentional infliction of emotional distress accrues when plaintiff suffers severe emotional distress due to outrageous conduct of defendant). Valenzuela's causes of action thus accrued in October 1996 for the distress inflicted at the shooting and, at the very latest, May 3, 1997 for the distress caused by the arraignment and trial.[14]

■ However, the California Supreme Court has recognized that "[t]he government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." *City of Long Beach v. Mansell*, 3 Cal.3d 462, 496–97, 91 Cal.Rptr. 23, 48, 476 P.2d 423 (1970); *see also Christopher P. v. Mojave Unified School Dist.*, 19 Cal.App.4th 165, 23 Cal.Rptr.2d 353 (1993) (applying equitable estoppel to claim under CTCA). Thus, a plaintiff has pleaded equitable estoppel where (1) the party to be estopped is appraised of the facts; (2) it intends that its conduct be acted upon; (3) the estopping party was ignorant of the true state

of facts; (4) the estopping party relies on the other party's conduct to her detriment; and (5) the plaintiff demonstrates that the injury to her personal interests if the government is not estopped exceeds the injury to public interest if the government is estopped. *Stewart v. City of Pismo Beach*, 35 Cal.App.4th 1600, 1606, 42 Cal. Rptr.2d 382, 385 (1995).

■ A public entity may be estopped from asserting non-compliance with the CTCA when affirmative acts of its agents, especially authority figures, deterred the filing of a timely claim. *Christopher P.*, 19 Cal.App.4th at 170–73, 23 Cal.Rptr.2d at 357–59 (allegation that authority figure directed child not to tell about molestation, thereby delaying filing of claim, sufficient to invoke equitable estoppel). Knowledge by the government's agent is sufficient to impute knowledge to the public agency. *See id.* at 173, 23 Cal.Rptr.2d at 359.

■ Here, Valenzuela has alleged sufficient facts to plead equitable estoppel. Defendants Perez and others who knew the events that occurred on the day of the shooting, but testified falsely as to what actually occurred. As authority figures, Perez and his cohorts expected and intended others, including prosecutors, judges and jurors, to rely on the truth of their statements, and they successfully induced such reliance. Given the objective of the police officers involved in the incident, Valenzuela had a right to rely on the truth of their statements in choosing not to pursue a claim against the City. Moreover, any injury to public interest in by permitting the lawsuit to proceed is far outweighed by the injury to Valenzuela's personal interests if she is prevented her from vindicating her rights due to the alleged perjury by the police officers. Thus, the Court concludes that Valenzuela has pleaded sufficient facts to infer that defendants intended that their perjurious testimony be relied upon, that they knew the truth and

---

14. The FAC does not allege when Ovando's arraignment or trial occurred. However, Valenzuela alleges that she was pregnant at all times. (FAC, ¶¶ 73– 74). The court dates were thus before Destiny was born on May 3, 1997.

she did not, and that she relied to her detriment on their statements which resulted in her delay in bringing the present suit against the named defendants. The Court finds that Valenzuela has pleaded facts sufficient to show equitable estoppel.

Accordingly, as to Valenzuela's causes of action for intentional and negligent infliction of emotional distress, defendants' Motion to Dismiss is DENIED.

C. *Certification for Interlocutory Appeal*

At the hearing held on March 13, 2000 regarding the instant motion, defendants made an oral motion to certify this order for interlocutory appeal. Plaintiffs did not object.

 This Court has discretion to certify an interlocutory order for appeal when (1) the order involves a controlling question of law; (2) there is substantial ground for differences of opinion as to that question; and (3) an immediate appeal has the potential to advance materially the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Although certification for interlocutory appeal should be applied sparingly, *United States v. Woodbury*, 263 F.2d 784, 788 n. 11 (9th Cir.1959), the Court finds that the instant motion involves controlling questions of law as to which there are substantial grounds for differences of opinion.

### 1. *Controlling Question of Law*

 An issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.1981), *aff'd sub. nom Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). Here, the question of whether a child can bring a substantive due process cause of action has the potential to affect the outcome of this litigation materially because, if no such claim exists, there is no federal question presented.

### 2. *Substantial Grounds For Difference of Opinion*

There is limited case law guiding courts on the constitutional claims here. Defendants assert that a child is prevented from bringing any substantive due process claim unless her association is permanently severed. Destiny alleges that "temporary" deprivations are actionable. The parties have not cited, nor could the Court find, any case which expressly addresses this issue. Accordingly, while the Court believes its analysis is correct, the Court recognizes that (1) this case presents certain issues that appear to be of first impression; (2) that the most pertinent precedent is 13 years old; and (3) either the Ninth Circuit, the Supreme Court, or both, may take a less expansive view of the substantive due process claim than *Smith* permits. Thus, the Court sees substantial ground for a difference of opinion on this issue.

### 3. *Materially Advance the Ultimate Termination*

Resolution of the issue on an interlocutory basis could materially advance the litigation because it would allow the parties to resolve a controlling question, while providing guidance on an unsettled area of law. It appears likely that, depending on the Ninth's Circuit's interlocutory ruling, the case may be resolved on summary judgment. Further, the Court takes notice that there are a number of Section 1983 actions before this Court, and other courts in this district, arising out of alleged Rampart Division police misconduct. Thus, certification will not only effectuate judicial economy, but also uniformity in the application of the law.

Accordingly, defendants' oral motion for certification of interlocutory appeal is GRANTED.

### IV.

### CONCLUSION AND ORDER

Based on the foregoing, the Court GRANTS the motion to dismiss Destiny's

claims .alleging a First Amendment violation and the portion of the substantive due process claim alleging a cause of action based on physical injury to her father. The remainder of the motion is DENIED.

The Court GRANTS defendants' motion certifying this order for interlocutory appeal.

IT IS SO ORDERED.